## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SCOTT EIZEMBER,** § | Civil No. _CIV-23-25-PRW_ |
| § | |
| **JEFFREY K. HOOD,** § | **THIS IS A CAPITAL** |
| § | **CASE.** |
| Plaintiffs, § | |
| § | Mr. Eizember is scheduled to |
| vs. § | be executed on |
| § | **THURSDAY, JANUARY 12,** |
| **STEVEN HARPE,** Director, Oklahoma § | **2023.** |
| Department of Corrections, § | |
| § | |
| **JIM FARRIS,** Warden, Oklahoma State § | |
| Penitentiary, § | |
| § | |
| **JUSTIN FARRIS**, Chief of Operations, § | |
| Oklahoma Department of Corrections, § | |
| § | |
| Defendants. § | |

### COMPLAINT UNDER 42 U.S.C. § 1983

Randall T. Coyne*
Attorney at Law
MBA # 549013
414 South Pickard Avenue
Norman, Oklahoma 73069
(405) 834-9317 (telephone)
(405) 609-1973 (facsimile)
rcoyne@ou.edu

Gregory W. Gardner**
Attorney at Law
P.O. Box 2366
Boulder, Colorado 80306
(202) 553-1651 (telephone)
gardnerlegal@gmail.com


*Counsel of Record
**Pro Hac Vice Forthcoming

## INTRODUCTION

Let this be recorded for a generation to come, so that
a people yet to be created may praise the LORD:

to hear the groans of the prisoners, to set free those who
were doomed to die

PSALMS 120: 18, 20.

1. Plaintiff Scott Eizember is a prisoner incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma. His Oklahoma DOC number is 497824.

2. The Department of Corrections ("DOC") is incarcerating Mr. Eizember under a sentence of death and intends to execute him by lethal injection on Thursday, January 12, 2023, at the Oklahoma State Penitentiary in McAlester, Oklahoma.

3. Mr. Eizember is a practicing Catholic.

4. Plaintiff Jeffrey K. Hood is a Catholic Priest in the Old Catholic Church. Exhibit 1. His religious beliefs are a mixture of ministry and advocacy. The Reverend Doctor Hood ministered this religious philosophy to Mr. Eizember, and Mr. Eizember accepted this philosophy as his own. Exhibit 3.

5. Dr. Hood is Mr. Eizember's chosen spiritual advisor. Dr. Hood agreed to serve in this capacity and to minister to Mr. Eizember until and including performing religious services in the execution chamber.

6. On Wednesday, January 4, 2023, the Oklahoma DOC rejected Dr. Hood's and Mr. Eizember's efforts for Dr. Hood to be in the execution chamber with Mr. Eizember during his execution.

7. Through the required Oklahoma DOC channels, Mr. Eizember has filed a grievance requesting that Dr. Hood be his spiritual advisor in the execution chamber. Due to the late date of Dr. Hood's rejection, Mr. Eizember's grievance could not be submitted earlier. Indeed, he submitted it quickly given the circumstances. And for the same reasons, the Defendants have not been able to respond, preventing Mr. Eizember from filing an appeal if applicable and necessary.

8. Relief is necessary for both Plaintiffs. Mr. Eizember will be executed in violation of the United States Constitution's First Amendment Free Exercise Clause and when substantially burdening the exercise of his religion under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIP).

9. Dr. Hood requires relief too. He is being excluded from the execution chamber in violation of his religious beliefs and practice. Upon information and belief, the Defendants are excluding Dr. Hood due to his activism outside the prison system. Because this activity is an integral part of Dr. Hood's religious beliefs, Exhibit 5, the DOC's actions based on these

religious practices also violate Dr. Hood's First Amendment Free Exercise Clause rights.

## JURISDICTION

10. The Court has jurisdiction under 42 U.S.C. §§ 4200cc-1, 28 U.S.C. §§ 1343, 1651, 2201, and 2202, and 42 U.S.C. §1983.

## VENUE

11. Venue lies in the Western District under 28 U.S.C. § 1391 because the judicial district is the home of the headquarters of the Oklahoma Department of Correction (3400 N Martin Luther King Ave, Oklahoma City, Oklahoma 7311), where "a substantial part of the events or omissions" occurred that resulted in the denial of Mr. Eizember's rights to have his chosen spiritual advisor with him in the execution chamber. And Mr. Eizember resides at the Oklahoma State Penitentiary in McAlester, Oklahoma, which is overseen by the Oklahoma Department of Corrections. Furthermore, the Defendants intend to execute Mr. Eizember in a prison run by the Oklahoma Department of Corrections.

12. And the venue lies in the Western District for Dr. Hood because a substantial part of the activities resulting in the denial of his religious rights occurred in that district.

## PARTIES

13. Plaintiff Scott Eizember is a prisoner on death row at Oklahoma State Penitentiary in McAlester, Oklahoma. He is under a sentence of death and scheduled to be executed on Thursday, January 12, 2023.

14. Plaintiff Rev. Dr. Jeffrey K. Hood is a priest in the Old Catholic Church. Dr. Hood is Mr. Eizember's spiritual advisor. And he is being excluded from the execution chamber for Mr. Eizember's execution and presumably other executions as well.

15. Defendant Steven Harpe is the Director of the Oklahoma Department of Corrections. He oversees the agency that seeks to execute Mr. Eizember. He is being sued in his official capacity.

16. Defendant Jim Farris is the warden of the Oklahoma State Penitentiary. This prison is the one where Mr. Eizember is housed and where prisoners are executed. He is being sued in his official capacity.

17. Defendant Justin Farris is the Chief of Operations of the Oklahoma Department of Corrections.  He is the advisor to Director Harpe with regard to the day-to-day operation of the Oklahoma Department of Corrections.  He is being sued in his official capacity.

## FACTUAL BACKGROUND

18. Dr. Hood and Mr. Eizember met in the Fall of 2022. Dr. Hood's ministry reaches out to death-row prisoners who are approaching execution, so he contacted Mr. Eizember toward the end of his legal case and shortly before execution.

19. Since September of 2022, the DOC has allowed Dr. Hood into Oklahoma State Penitentiary to visit 4 different prisoners as a spiritual advisor, including Mr. Eizember. Permission was granted for these visits after a series of phone conversations, submission of clergy documents, and an extensive background check. Dr. Hood apparently was not enough of a security concern to prevent him from entering the prison and interacting with prisoners such as Mr. Eizember. In fact, Dr. Hood visited the prison multiple occasions over a period of multiple months without incident (as recently as a few weeks ago).

20. Mr. Eizember was eager to meet Dr. Hood. He quickly steered the conversation toward developing a spiritual-advisor relationship with Dr. Hood after a brief period of skepticism brought on by previous negative relationships with other spiritual advisors. Exhibit 3.

21. Dr. Hood agreed to be Mr. Eizember's spiritual advisor. Exhibit 2.

22. During their relationship, Dr. Hood prayed with Mr. Eizember, read scripture with Mr. Eizember, taught ethical methods to Mr. Eizember, listened to Mr. Eizember's innermost thoughts, heard confession from Mr. Eizember, spoke at the clemency hearing for Mr. Eizember, reconnected Mr. Eizember with an estranged child, provided spiritual guidance to Mr. Eizember, led a clemency campaign for Mr. Eizember, cried with Mr. Eizember, spoke out for Mr. Eizember, laughed with Mr. Eizember, and a whole host of other things. In short, Dr. Hood is Mr. Eizember's pastor.

23. At Mr. Eizember's request, Dr. Hood agreed to accompany him into the execution chamber to minister to him at that critical hour.

24. To do so, Dr. Hood went through a thorough application process, including a background check. Att. B, D. In response, Dr. Hood submitted a plethora of documents and submitted to numerous interviews. Exhibits 2, 4.

## CLAIMS FOR RELIEF

25. Dr. Hood and Mr. Eizember incorporate by reference and re-allege the allegations contained in the previous paragraphs of this Complaint.

## CLAIM ONE: FIRST AMENDMENT FREE EXERCISE OF RELIGION: Plaintiffs Scott Eizember and Dr. Jeffrey K. Hood`

26. The First Amendment to the United States Constitution requires States to "make no law . . . prohibiting the free exercise of" religion. U.S. Const.

amend. I. *See also Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)

(holding that the Free Exercise Clause is applied to the States through the

Fourteenth Amendment to the United States Constitution).

27. After a period of precluding clergy from the execution chamber, the DOC

    now allows them into that chamber. To gain access to their parishioners,

    clergy must submit to a background check and interviews.

28. When the DOC receives the combined results, the Defendants decide

    whether a spiritual advisor will be allowed into the execution chamber. Their

    decision is final as far as the DOC is concerned.

29. Mr. Eizember is scheduled to be executed on Thursday, January 12, 2023.

    According to United States Supreme Court precedent, Mr. Eizember is

    entitled to a spiritual advisor with him in the execution chamber. *E.g.*, *Dunn*

    *v. Smith*, 141 S. Ct. 175, 175 (2021). While prison security is a valid

    concern, the Defendants must connect their actions excluding spiritual

    advisors to that security. *Ibid.*

30. When State actors hinder a person's ability to practice his religion, courts

    first must determine if the action is neutral and generally applicable. *Church*

    *of the Lukumi Balbao Aye, Inc. v. Hialeah*, 508 U.S. 520, 531 (1993).

31. If it is neutral and generally applicable, the State action can have an

    "incidental effect of burdening a particular religious practice." *Ibid.*

32. If the State action is not neutral and generally applicable, it must survive strict scrutiny. Governments survive strict scrutiny when they show a "compelling governmental interest" that is "narrowly tailored to advance that interest." *Ibid*.

33. Here, the DOC's actions are not neutral. They are hostile toward religion. Indeed, they deny a prisoner his chosen spiritual advisor at the most critical juncture of his life: his death. Because it is not neutral, the DOC's actions must survive strict scrutiny. They cannot. The DOC has allowed Dr. Hood to visit the prison to minister to Mr. Ezimber. In fact, Dr. Hood has visited four prisoners in recent months. The DOC has not stopped him or limited his activities more than usual. And the DOC is even allowing Dr. Hood to visit Mr. Eizember in the days before his execution, recognizing the importance of a chosen spiritual advisor ministering to a condemned prisoner.

34. Other, less severe measures are available to the DOC. Most obviously, it could ensure that its employees are trained properly to secure the execution chamber against one person. Similarly, it can add an employee or two to ensure security. Either solution presents a less onerous impact on Mr. Eizember's and Dr. Hood's religious practice, and they are more narrowly tailored to protect prison security.

## CLAIM TWO: THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT ("RLUIPA"): Plaintiff Scott Eizember

35. Dr. Hood and Mr. Eizember incorporate by reference and re-allege the allegations contained in the previous paragraphs of this Complaint.

36. Even if this Court determines that the DOC's rejection of Dr. Hood's presence in the execution chamber does not violate the First Amendment, it should find that this State action violates RLUIPA.

37. RLUIPA states in part that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." RLUIPA "alleviates exceptional government-created burdens on private religious exercise." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

38. RLUIPA provides more "expansive protection" for religious liberty than the United States Supreme Court First Amendment case law. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015). "In RLUIPA, in an obvious effort to effect a complete separation from the First Amendment case law, Congress deleted reference to the First Amendment and defined the 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 696 (2014) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

39. State actions that stop Dr. Hood from ministering to Mr. Eizember at the time of his death violates their religious practice at the most vital moment of his life: his transition from life to the afterlife. *See, e.g.*, *Holt*, 135 S. Ct. at 862 (determining that where a prisoner shows the exercise of religion "grounded in a sincerely held religious belief," enforced prohibition "substantially burdens his religious exercise"). It, thus, substantially burdens the practice of his religion.

40. Because the Defendants' actions do substantially burden the Plaintiffs' religious beliefs and practices, the Defendants must satisfy the strict-scrutiny test. In other words, the Defendants must prove the State action is "the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. §2000cc-1(a).

41. The strict scrutiny standard is "exceptionally demanding." *Holt*, 574 U.S. at 353 (quoting *Hobby Lobby Stores*, 573 U.S. at 728). And the Defendants have the burden to show they can meet this difficult test. *Id.* at 357, 362.

42. Here, the Defendants cannot show a compelling government interest. As discussed above, prison security is a concern and government interest. In this case, however, it is not compelling. To be compelling, the governmental interest must be a necessity and not a matter of discretion. The Defendants'

actions are a matter of discretion. Given the security measures the
Defendants can easily take, this decision is largely discretionary.

43. Likewise, the Defendants cannot prove they have employed the least
restrictive way to further that governmental interest. Also as discussed
above, the Defendants have multiple ways to ensure the security of the
prison. They can better train their execution-team employees, for example.
They can also order more employees into the execution chamber to guard
Dr. Hood. These are only two examples.

44. And the Defendants' action is further complicated by the fact that they have
allowed Dr. Hood into the prison multiple times to minister to multiple
prisoners. More specifically, they have allowed Dr. Hood to visit Mr.
Eizember multiple times. Even after rejecting Dr. Hood's efforts to be in the
execution chamber, they have allowed Dr. Hood to continue ministering to
Mr. Eizember and he is scheduled to meet with Mr. Eizember in person in
the days leading up to his execution. Dr. Hood clearly is not a security
concern.

45. Accordingly, if the Court concludes that the DOC's revised policy does not
violate the First Amendment, it should decide that the policy violates
RLUIPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Scott Eizember and the Reverend Doctor Jeffrey K. Hood prays that this Honorable Court provide relief as follows:

1. A declaratory judgment that the Defendants' action to preclude Dr. Hood from Mr. Eizember's execution chamber violates Mr. Eizember's First Amendment rights under the Free Exercise Clause;

2. A declaratory judgment that the Defendants' action to preclude Dr. Hood from Mr. Eizember's execution chamber violates Dr. Hood's First Amendment rights under the Free Exercise Clause;

3. A declaratory judgment that the Defendant's preclusion of Dr. Hood violates Mr. Eizember's rights under RLUIPA;

4. A preliminary and permanent injunction prohibiting the Defendants from executing Mr. Eizember until they can do so in a way that does not violate his rights; and

5. A preliminary and permanent injunction prohibiting the Defendants from executing Mr. Eizember until they allow Dr. Hood into the execution chamber during Mr. Eizember's execution.

Respectfully submitted,


/s/ Randall T. Coyne                          /s/ Gregory W Gardner
Randall T. Coyne*                            Gregory W. Gardner**
Attorney at Law                              Attorney at Law
MBA # 549013                                 P.O. Box 2366
414 South Pickard Avenue                     Boulder, Colorado 80306
Norman, Oklahoma 73069                       (202) 553-1651 (telephone)
(405) 834-9317 (telephone)                   gardnerlegal@gmail.com
(405) 325-0398 (facsimile)
rcoyne@ou.edu


*Counsel of Record
**Pro Hac Vice Forthcoming

## VERIFICATION

I, Gregory W. Gardner, attorney for the Plaintiffs in the above-titled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

Executed on Sunday, January 8, 2023.

/s/ Gregory W. Gardner
Gregory W. Gardner

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2023, I electronically

transmitted the attached document to the Clerk of Court using the ECF System for

filing and as an attachment to an e-mail sent to the new cases e-mail address of

newcases@okwd.uscourts.gov. The Clerk of Court will transmit a Notice of

Electronic Filing to the following ECF registrants:

fuc.docket@oag.state.ok.us

/s/ Randall T. Coyne
Randall T. Coyne
Attorney for Scott Eizember